IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELLA CHANDLER *on behalf of herself* *and all others similarly situated*, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| HEARTLAND EMPLOYMENT SERVICES, LLC et al. | : : : | NO.  12-4395 |
| Defendants. | : | |

**MEMORANDUM**

**L. Felipe Restrepo, J.**                                                                                                       **April 28, 2014**

      Plaintiff Ella Chandler brought suit against Defendants Heartland Employment Services, LLC ("Heartland") and Wallingford Nursing and Rehabilitation Center ("Wallingford"), on behalf of herself and others similarly situated, alleging that the defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 207 & 216(b) ("FLSA"), by requiring employees to launder and iron their uniforms at home, without pay.[1]  Three additional plaintiffs have since opted in to the suit.  *See* ECF Doc. 43.  The plaintiffs now seek authorization to notify a nationwide class of Heartland employees that they may also opt in.  For the reasons that follow, the motion will be denied without prejudice.

    **I.**    **The Uniform Maintenance Claim and Evidence**

      Plaintiff Ella Chandler worked as a full-time Dietary Aide at a Heartland-owned nursing home in Wallingford, Pennsylvania from 2004 to 2012.  Am. Compl. (Doc. 20) ¶ 6, 53-60.  According to the Amended Complaint, Heartland owns approximately 500 healthcare facilities

---

[1] Chandler initially brought suit against several additional defendants; they have been removed from the case pending further discovery by stipulation of the parties.  *See* ECF Doc. 40.  The Amended Complaint contains a Pennsylvania state-law claim as well, but it is not currently at issue.  *See* Doc. 20.

and agencies in thirty-two states and employs more than 60,000 people. *Id.* ¶ 8. Chandler alleges that Heartland required her to spend approximately two hours per week ironing her uniform, off the clock and without pay, in violation of 29 U.S.C. § 207, the FLSA's overtime provision, and that its policies imposed a similar burden on other employees. She asks to notify "every person who has worked as a full-time, hourly employee in the dietary, housekeeping or nursing department of any of [Heartland's] skilled nursing facilities at any time during the past three years" that she or he may opt in to the suit. Plaintiff's Proposed Order (docketed with this opinion). *See also* Doc. 42-2 (Plaintiff's initial Proposed Order); Transcript of Oral Argument (Doc. 61, hereinafter "Tr.") 56.

The company policy that forms the basis of Chandler's claim is the "HCR ManorCare Professional Appearance and Dress Code Guidelines for Employees" ("ManorCare Dress Code"), which applies to all of Heartland's skilled nursing facilities. Doc. 42-3. The ManorCare Dress Code explains the importance of employees' appearance ("The way we dress plays an important role in caring for patients. It helps us stay safe and infection-free . . . [It] can also change what people think about our quality of care . . ."), consequences of non-compliance ("If an employee does not meet these guidelines, he/she may be sent home to change clothes"); and procedures for accommodations. *Id.* ¶¶ 1-3. It also includes substantive requirements. *Id.* ¶ 4. Of relevance here, the policy states that "clothes must fit properly, cover the body and be *free from wrinkles*." *Id.* (emphasis added). Finally, with respect to uniforms, the Dress Code explains that "[e]ach facility has uniform guidelines for employees according to position or job role. If a position requires a uniform, employees must follow the standards set by the facility" and are "responsible for keeping uniforms clean and in good repair." *Id.* ¶ 5.3. This is the only evidence provided by Chandler that clearly applies to the proposed class as a whole.

Chandler and two of the opt-in plaintiffs have also provided testimony regarding the uniform requirements at their respective facilities. Opt-in plaintiff Cynthia Shaw-Spencer worked as a certified nursing assistant ("CNA") at a Heartland facility in Yeadon, Pennsylvania from 2003 to 2010. *See* Doc. 54-3, 18, 45. Opt-in plaintiff Carole Ann Guerra was employed as a CNA at a Heartland facility in Devon, Pennsylvania from 2004 to 2013. *See* Doc. 54-5, 16-17. All three plaintiffs testified, in essence, that they were required to iron their uniforms and were not provided time or opportunity to do so during working hours. All three recounted that supervisors instructed them, or other employees, to iron their uniforms, and that employees were regularly told in trainings that uniforms must be pressed. *See* Chandler Dep. (Doc. 54-1), 52-53, 84-85, 130-31, 150, 228, 243-48; Shaw-Spencer Dep. (Doc. 54-3), 23-24, 31, 41-48, 62-64, 68, 76-78, 100, 115; Guerra Dep. (Doc. 54-5), 19-20, 50-57, 64-65. Each plaintiff spent about two hours per week washing, drying and ironing her uniforms without compensation. *See* Chandler Decl., Doc. 42-5, ¶ 10; Chandler Dep. 90-92, 253-55; Shaw-Spencer Dep. 62-64, 116-18; Guerra Dep. 65, 75-78, 80-83, 90.

Finally, Chandler has submitted the Wallingford "Employee Dress Code," which requires employees to "maintain high standards of neatness and personal hygiene," and provides that "[c]lothing must be neat and clean and appropriate for the professional image all employees should project." Doc. 42-4. It delegates uniform policy to departments: "For employees required to wear uniforms, the Department Manager will specify the type of uniform required." Doc. 42-4.

In opposition to Chandler's motion, the defendants have submitted seventeen declarations by employees and administrators of Heartland skilled nursing facilities. *See* Docs. 51-2, 51-3.[2]

---

[2] The defendants submitted forty-eight declarations in total, but only seventeen are relevant to the proposed notice class as clarified at oral argument. *See* Tr. 56.

3

The declarations illustrate that uniform requirements vary by facility and department, while laundering and ironing practices vary by individual. *See, e.g.* Doc. 51-2, 18 (Fox Decl., stating that at ManorCare-Allentown "[o]nly the nurses and C.N.A.s are required to wear scrubs;" others can wear "polo shirts and khakis"); *id.* 17 (Ehrman Decl., stating that at ManorCare-Greentree "nurses do not have to wear scrubs – they can wear navy pants and a navy top or navy or white jacket"); *id.* 3 (Bonner Decl., noting that she irons her uniforms as a "personal preference"); *id.* 6 (Chikwere Decl.; "I iron my uniforms when I have time."); *id.* 7 (Catullo Decl.; "I do not iron my scrubs. They do not look wrinkled because I take them out promptly and set them aside to wear."). Several of the declarants, both department employees and administrators, assert that their facilities have not required employees to iron their clothing. *See, e.g.*, *id.* 18 (Fox Decl. ¶ 8); *id.* 43 (Hanna Decl. ¶ 7).

The defendants have also submitted "Uniform Color and Style Guidelines" that were purportedly adopted by Heartland's skilled nursing division as of January 1, 2012. *See* Resp. (Doc. 51), 5; Ex. 8 to Chandler Dep. (Doc. 51-1, 34); Ex. 2 to Shaw-Spencer Dep. (Doc. 51-1, 79). The record contains two versions of the Guidelines, which differ slightly. The Guidelines adopted by Wallingford required "White polo shirt, Black pants" for the dietary department; "Green polo shirt, Khaki pants" for the housekeeping department; and blue "uniform scrubs" for the nursing department. Doc. 51-1 at 34. The Guidelines adopted by the Yeadon facility required "black pants and white short-sleeved polo uniform shirt" for the Dietary Department, "green uniform scrubs" for housekeeping, and "blue uniform scrubs" for nursing. *Id.* at 79. It is unclear whether the Guidelines imposed consistent color and style requirements on all skilled nursing facilities or whether they allowed each facility to make these choices.

II.     **Statutory Framework: "Conditional Certification" of a Collective Action**

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk,* 133 S.Ct. 1523, 1527 (2013). Section 16(b), codified at 29 U.S.C. § 216(b), empowers an employee to bring suit against her employer, either on her own or on behalf of all others "similarly situated." *Id.* Unlike members of a Rule 23 class, participants in an FLSA collective action must "opt in" by filing written consents with the court. *Compare* 29 U.S.C. § 216(b) *with* Fed. R. Civ. P. 23; *see also Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242-43 (3d Cir. 2013) (contrasting FLSA collective actions and Rule 23 class actions).

The Third Circuit has endorsed a two-step process for determining whether an FLSA suit may proceed as a collective action:

> Applying a "fairly lenient standard" at the first step, the court makes a preliminary determination as to whether the named plaintiffs have made a "modest factual showing" that the employees identified in their complaint are "similarly situated." If the plaintiffs have satisfied their burden, the court will "conditionally certify" the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery. At the second stage, with the benefit of discovery, "a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff."

*Camesi*, 729 F.3d at 243 (citing *Zavala v. Wal-Mart Stores Inc.,* 691 F.3d 527, 535-37 (3d Cir. 2012) and *Symczyk v. Genesis Healthcare Corp.,* 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds, Symczyk,* 133 S.Ct. at 1526).

To make a modest factual showing that employees are "similarly situated" with respect to an FLSA claim, "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Zavala*, 691 F.3d at 545 n.4 (citing *Symczyk,* 656 F.3d at

5

193).  To assess the propriety of conditional certification, courts consider whether the prospective class members' claims are subject to proof by common evidence, or whether each person's claim will hinge on his or her "specific circumstances."  *Williams v. Securitas Sec. Servs. USA, Inc.*, No. 10-7181, 2011 WL 3629023, at *1 (E.D. Pa. 2011) (citing *Bamgbose v. Delta-T Grp., Inc.*, 684 F. Supp. 2d 660, 668 (E.D. Pa. 2010)).  "Being similarly situated does not mean simply sharing a common status. . . . Rather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA," such that liability and damages need not be "individually proven."  *Zavala,* 691 F.3d at 538.

## III.    Discussion

The plaintiffs have identified only one policy that applies to all of Heartland's skilled nursing facilities:  the requirement that employees' clothing be "free from wrinkles" and that uniforms be kept "clean and in good repair."  Doc. 42-3.  The plaintiffs contend that this policy imposes a similar burden on all full-time, hourly employees in the facilities' nursing, dietary and housekeeping departments, because those employees have daily contact with residents and are required by the nature of their work to launder their work clothing frequently.  More specifically, the plaintiffs contend that the wrinkle-free policy imposed a de facto ironing requirement that led employees to perform several hours weekly of unpaid work.

At present, however, the record does not contain a "modest factual showing" to that effect.  To begin with, the plaintiffs have not articulated – and the record does not disclose – how many facilities and employees their proposed notice class includes.  It would appear to involve a nationwide class of significant size.  Among Heartland's skilled nursing facilities, the record suggests that uniforms have varied over time, across facilities, and between departments.  Without knowing what clothing employees wear, it is impossible to gauge whether the

requirement to keep it "free from wrinkles" imposes a burden that can be proven collectively. It may be harder to keep nursing scrubs free from wrinkles than a green polo shirt and khakis, or vice versa.

Furthermore, the actual effect of the "free from wrinkles" policy appears to depend on its implementation by individual facilities, departments, and supervisors. The three plaintiffs' facility-specific testimony illustrates as much. If the proposed notice class were more limited, perhaps their testimony could be taken as representative. It cannot, however, be assumed to represent the experience of a national class of unspecified size and geographical scope.

The scale and composition of the notice class differentiates this case from the other uniform-maintenance cases that the plaintiffs invoke: *Potoski v. Wyoming Valley Health Care Sys.*, No. 11-582, 2013 WL 6731035 (M.D. Pa. 2013); *Outlaw v. Secure Health L.P.*, No. 11-602, 2012 WL 3150582 (M.D. Pa. 2012); and *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49 (D.D.C. 2012). In *Potosi*, the Court's authorization for notice was limited to the hourly, uniformed employees of three hospitals. *See* 2013 WL 6731035 at *1.[3] The notice in *Outlaw* was also limited to three facilities, *see* 2012 WL 3150582 at 1, and in *Dinkel*, aside from the fact that the notice was limited to nine hospitals, the defendants had failed to contest the request for notice on the uniform-maintenance claim. *See* 880 F. Supp. 2d at 49, 51, 57-58. None of these cases counsels conditional certification of a nationwide class of workers – engaged in different jobs in many different facilities with potentially varied uniform requirements – on the basis of the single common mandate to keep their clothing "free from wrinkles."

The more applicable case, at this point, is *Williams v. Securitas Security Services USA, Inc.*, No. 10-7181, 2011 WL 3629023 (E.D. Pa. 2011), in which the court found that the "array

---

[3] The policy at issue also required that uniforms be "neatly pressed," but the Court implied that the ironing requirement was not determinative of its decision to authorize notice. *See id.* at *8-9.

of uniforms" worn by the security guards in the proposed notice class, and differing laundering practices, precluded collective adjudication of a uniform-maintenance claim. *See id.* at *5-6. Along similar lines, in *Hall v. Guardsmark, LLC*, No. 11-213, 2012 WL 3580086 (W.D. Pa. 2012), variation among uniforms led the Court to deny conditional certification despite a common requirement that security officers keep their uniforms "neat, clean and well pressed at all times:"

> Because the two named plaintiffs do not concur about the uniforms they wore or the maintenance required of them, the Court cannot infer that Guardsmark employees have similar claims for uncompensated time spent maintaining Guardsmark uniforms.

*Id.* at *3, 14. And in *Goldstein v. Children's Hospital of Philadelphia*, No. 10-1190, 2013 WL 664174 (E.D. Pa. 2013), the Court granted conditional certification of a class of hospital security guards who were required to "present for work in a specific uniform in a 'clean, well pressed' condition," but it found that the plaintiff had not shown that hospital employees who wore other uniforms were "similarly situated" for purposes of the uniform-maintenance claim. *Id.* at 6. As in those cases, the potential variation among uniforms here precludes a finding that all the members of the proposed notice class have similar uniform-maintenance claims.

The variation among job duties presents a different problem. Nursing, food service, and housekeeping entail different responsibilities. Those jobs may differ further among facilities. Liability in this case, as in other FLSA uniform-maintenance cases, will likely hinge on whether the maintenance at issue is excluded from FLSA coverage by the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.* – that is, whether uniform maintenance is an ancillary "preliminary" and "postliminary" activity, or instead constitutes "an integral and indispensable part" of employees' principal job duties. *See* 29 U.S.C. § 254; *Steiner v. Mitchell*, 350 U.S. 247, 253 (1956); *Schwartz v. Victory Sec. Agency, LP*, No. 11-0489, 2011 WL 2437009 (W.D. Pa. 2011). That

determination will turn on the nature of the class members' jobs; the plaintiffs have made no showing that it can be made for the proposed class as a whole. *Cf. Goldstein*, 2013 WL 664174, at \*6 (denying conditional certification of class in part because "the principal activities of the various job titles are so variable that even maintenance of identical uniforms may not bear the same 'indispensable' relation to the job from one position to another").

Finally, the defendants focus much of their argument on variation among individuals' fabric and laundering choices. Even if uniforms and job duties were consistent, or could be grouped in sub-classes, the defendants argue that the wrinkle-free policy could never give rise to common claims because there are myriad ways to prevent wrinkles, including by purchasing "wash-and-wear" material. The plaintiffs reply that "wash-and-wear" uniforms are not a feasible alternative because they are expensive and require ironing in any case. *See* Shaw-Spencer Dep., Doc. 54-3, 70; Guerra Dep., Doc. 54-5, 33, 54; Tr. 7. Alternately, the plaintiffs argue that whether ironing is actually required or not, many employees do it to comply with Heartland's policy, and it is therefore compensable. *See* Tr. 7. Given the plaintiffs' failure to show that the wrinkle-free policy applied to similar uniforms or was enforced consistently across Heartland's skilled nursing facilities, I need not decide the relevance of individual laundering practices at present.[4]

In sum: The only evidence provided by the plaintiffs which is applicable across the proposed nationwide class is the Heartland policy requiring employees to keep their work clothing clean and free from wrinkles. The plaintiffs have provided no evidence, beyond speculation, of a factual nexus between the way this policy affected them and the way it has affected the proposed class as a whole. The record does not contain a "modest factual showing"

---

[4] I will also decline to address the regulation and Department of Labor Handbook provision referenced by the defendants, the applicability of which the parties dispute. *See* Resp. 21 (citing 29 C.F.R. § 4.168(b); DOL FIELD OPERATIONS HANDBOOK, § 30c12(b)(2), (5) (Dec. 9, 1988)).

that the proposed class members are similarly situated with respect to the uniform-maintenance claim; nor does it appear that sending an FLSA notice to a potentially vast and still-undefined class will facilitate litigation that is "orderly," "sensible," and "manageable." *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 52, 56 (D.D.C. 2012) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989)).

## IV. Conclusion

For the reasons given, the plaintiffs' motion for conditional certification of an FLSA collective action is denied. If discovery produces adequate evidence, the plaintiffs many renew the motion to authorize notice to an appropriately targeted class or subclasses. An implementing order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

ELLA CHANDLER,
                   Plaintiff,

v.                                        Case No. 2:12-cv-04395- LFR

HCR MANORCARE, HCR HEALTHCARE,
LLC, MANOR CARE, INC., HEARTLAND
EMPLOYMENT SERVICES, LLC AND
WALLINGFORD NURSING AND
REHABILITATION CENTER
                   Defendants.
_____

## **[PROPOSED] ORDER**

     **AND NOW**, this _____, day of _____, 2013, upon consideration of Plaintiff's Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b), it is hereby **ORDERED** that this Motion is **GRANTED** as follows:

     Kolman Ely, P.C. and Sommers Schwartz, P.C. are appointed as Class Counsel.

     Within 7 days, Class Counsel shall file a proposed form of Class Notice for the Court's review;

     Within 14 days, Defendants shall serve Class Counsel with a computer-readable data file containing the name, last known mailing address, employee ID number and last four digits of the Social Security number of every person who has worked as a full-time, hourly employee in the dietary, housekeeping or nursing department of any of Defendants' skilled nursing facilities at any time during the past three years;

     Following the approval of the Class Notice, Class Counsel will timely disseminate the approved Notice to all Class members and Defendants will immediately post the Notice in the work premises of all current employees who may be affected by this lawsuit and, thereafter, refrain from any other communication with Class members concerning this lawsuit.

                                               **BY THE COURT:**

                                             _____
                                             **L. Felipe Restrepo, U.S.D.J.**